# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BMO Harris Bank, N.A., | Civil No. 17-335 (DWF/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| McM, Inc. and Ronald G. McMartin, Jr., | |
| Defendants. | |

---

Davit T. B. Audley, Esq., and Michael T. Benz, Esq., Chapman & Cutler, LLP; and Thomas J. Lallier, Esq., Foley & Mansfield, PLLP, counsel for Plaintiff.

Jon R. Brakke, Esq., Vogel Law Firm, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss, on the Alternative, to Transfer Venue brought by Defendant Ronald G. McMartin Jr. ("McMartin Jr.") (Doc. No. 19); a Motion to Appoint Receiver Over the Assets of McMartin Jr. brought by Plaintiff BMO Harris Bank, N.A. ("BMO") (Doc. No. 24); and a Motion for Leave to Supplement the Record and Requesting that the Court Take Judicial Notice brought by BMO (Doc. No. 50). For the reasons set forth below, the Court denies the motion to dismiss or transfer, grants the motion to appoint a receiver, and grants the motion to supplement and take judicial notice.

## BACKGROUND

This diversity action involves allegations by BMO that McMartin Jr. personally guaranteed a revolving line of credit extended by BMO to Defendant McM, Inc. ("McM, Inc."). McM, Inc. was a farming and cattle operation before filing for bankruptcy.[1] McM, Inc. is a North Dakota corporation with its principal place of business in St. Thomas, North Dakota. (Doc. No. 1 ("Compl.") ¶ 6; Doc. No. 22 ("McMartin Jr. Aff.") ¶ 1.) McMartin Jr. is a citizen of the State of North Dakota and the sole owner and officer of McM, Inc. (Compl. ¶¶ 1, 7; McMartin Jr. Aff. ¶ 1.)[2] BMO is a national banking association with its primary office in Chicago, Illinois. (Compl. ¶ 5.) BMO alleges that McM, Inc. borrowed approximately $43 million from BMO and that McM, Inc.'s obligations have now matured. The Complaint details the loan agreements and related documents. (Compl. ¶¶ 8-36.) In addition, the Complaint alleges that McMartin Jr. executed and delivered to BMO a Guaranty dated July 31, 2012. (Compl. ¶ 30, Ex. 17; Doc. No. 34, Ex. 1 (the "Guaranty").) The Guaranty contains a forum selection clause:

---

[1]    The case against McM, Inc. is stayed by virtue of the bankruptcy filing.

[2]    In its Complaint, BMO alleges that McMartin Jr. is a citizen of the state of North Dakota. (Compl. ¶ 7.) Despite that allegation, BMO now argues that evidence suggests McMartin Jr. actually resides in Minnesota. In support, BMO attaches an article published in *Lake and Home Magazine* in the fall of 2016 featuring McMartin Jr.'s lake home on Island Lake in Minnesota and reporting that McMartin Jr. divides his time between his home in Grand Forks, North Dakota and the Minnesota property. (Doc. No. 34, Ex. 2.) BMO also asserts, without citation to evidence, that McMartin Jr. sold his home in Grand Forks, North Dakota in October 2016, and suggests that McMartin Jr. is now domiciled in Minnesota for purposes of venue. In his reply, McMartin Jr. submitted additional evidence of his residency, stating that he is residing at his parents' home in St.

> CHOICE OF VENUE  GUARANTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY GUARANTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN THE DISTRICT COURT OF BROWN COUNTY, MINNESOTA, OR AT LENDER'S DISCRETION IN THE UNITED STATES DISTICT COURT FOR THE DISTRICT OF MINNESOTA.  GUARANTOR HEREBY EXPRESLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER IN SUCH COURT.  GUARANTOR WAIVES ANY CLAIM THAT . . . THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE.  THE EXCLUSIVE CHOICE OF FORUM FOR GUARANTOR SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT, BY LENDER, OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING, BY LENDER, OF ANY ACTION TO ENFOCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND GUARANTOR HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACK ANY SUCH JUDGMENT OR ACTION.

(Guaranty ¶ 13.)

In addition, BMO alleges that McMartin Jr. granted BMO a security interest in all of his personal property (collateral).  (Compl. ¶ 32.)  BMO also alleges that McMartin Jr. breached the Guaranty, and further that McM, Inc. and McMartin Jr. fraudulently misrepresented (by millions of dollars) the financial statements and financial information that they delivered to BMO in support of the loans received and requests for advances under its revolving credit line with BMO.  (*See generally* Compl. ¶¶ 37-58; *see generally* Doc. No. 26 ("Mueller Decl.").)

---

Thomas, North Dakota.  (Doc. No. 36 ¶ 2.)  McMartin Jr. also attached a copy of a North Dakota driver's license issued December 14, 2016 using a St. Thomas, North Dakota address.  (*Id*. ¶ 3 & Ex. 1.)  The record supports a finding that McMartin Jr. is a North Dakota resident.

On February 1, 2017, BMO filed the present Complaint and a Motion for Appointment of a Receiver over the assets of McM, Inc. On the day that the motion was scheduled to be heard, McM, Inc. filed a voluntary petition under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of North Dakota. By operation of law, this case is stayed as to McM, Inc. Subsequently, BMO filed the present Motion for the Appointment of a Receiver Over the Assets of McMartin Jr. McMartin Jr. moves to dismiss this case or to transfer it to the U.S. District Court for the District of North Dakota. Finally, BMO moves for leave to supplement the record and requests that the Court take judicial notice. The Court considers the motions below.

## DISCUSSION

**I.    Motion to Dismiss or Transfer**

McMartin Jr. moves to dismiss this action pursuant to Rules 12(b)(3), 28 U.S.C. § 1391(b), and 28 U.S.C. § 1406(a), or, in the alternative, to transfer the action under 28 U.S.C. § 1406(a) and/or § 1404(a). Specifically, McMartin Jr. argues that this case should be dismissed for improper venue or transferred to the District Court of North Dakota.

> Under 28 U.S.C. § 1391(b), venue in diversity cases is only appropriate in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

4

> defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For purposes of venue, a natural person "resides" in the judicial district in which that person is domiciled. 28 U.S.C. §1391(c). Here, McMartin Jr. bears the burden of demonstrating that BMO's chosen venue is improper. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

McMartin Jr. argues that: (1) none of the Defendants reside in Minnesota; (2) the events giving rise to BMO's claims did not arise in Minnesota; and (3) North Dakota is the proper district for this action. In the alternative, McMartin Jr. contends that the Court should transfer this action pursuant to § 1404(a) on convenience grounds. BMO alleges that venue is proper because Defendants expressly consented to venue by agreeing to the forum-selection clause and therefore expressly waived any claim that this District would be improper based on a lack of venue or an inconvenient forum.

Both parties cite to the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013). In *Atlantic Marine*, the Supreme Court expressed support for the enforcement of contractual forum-selection clauses "[i]n all but the most unusual cases." *Atl. Marine Constr. Co.*, 134 S. Ct. at 583. In doing so, the Supreme Court distinguished between forum-based challenges under §1404(a) (applying convenience factors) and challenges based on alleged improper venue under §1406(a). *See id.* at 577-78. The Supreme Court explained that the existence of a forum-selection clause has "no bearing" on whether venue is improper under § 1406 because that source of authority applied where venue

5

itself (rather than forum) was improper. *Id*. at 577 ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."). Thus, the Court must determine whether venue in this case is proper under §1391(b) in this District.

Here, Defendants reside in North Dakota and there is no evidence that a substantial part of the events or omissions giving rise to BMO's claims against McMartin Jr. occurred in Minnesota. Thus, venue is not proper under § 1391(b)(1) or § 1391(b)(2). Moreover, § 1391(b)(3) applies only if there is no district in which the action may otherwise be brought. It is evident that this action could have been brought in North Dakota. Thus, the Court concludes that the provisions of § 1391 have not been met. Therefore, venue is not proper in this Court *unless* McMartin Jr. has waived his right to object to venue in this District by agreeing to the forum-selection clause. *See, e.g.*, *Servpro Indus., Inc. v. JP Penn Restoration Servs.*, Civ. No. 16-298, 2016 WL 5109947, at *2 (M.D. Tenn. Sept. 20, 2016). As explained in *Servpro*, *Atlantic Marine* involved a case where a party attempted to dismiss or transfer a case in order to enforce a forum-selection clause. In that case, the court could not consider the forum-selection clause in determining whether the non-agreed upon forum was proper under venue laws. Here, however, McMartin Jr. is attempting to dismiss or transfer the case away from an agreed upon forum. The court in *Servpro* explained that the principle that a valid forum-selection clause should be given controlling weight applies more strongly where a defendant, such as McMartin Jr. here, seeks to transfer the case out of the agreed upon

6

forum. *Id*. at *2-3.  The Court agrees and also reiterates the premise that when a party agrees to a forum-selection clause, that party waives the right to challenge the preselected forum as inconvenient.  *See id*. at *3-4.

In this case, there is no dispute that McMartin Jr. expressly consented to and waived any objections to venue in this District.  (*See* Guaranty ¶ 13 ("GUARANTOR WAIVES ANY CLAIM THAT . . . THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE.").  Having agreed to the forum-selection clause, McMartin Jr. cannot now argue that venue is improper or inconvenient.  Accordingly, McMartin Jr.'s motion to dismiss or transfer is denied.

**II.     Motion to Supplement the Record and Requesting that the Court Take Judicial Notice**

BMO moves to supplement the record and requests that the Court take judicial notice.  In particular, BMO seeks to supplement the record with the Declaration of Randall T. Boushey (Doc. No. 50-2 ("Boushey Decl.")), which BMO argues supports its assertion that McMartin Jr. has diverted and will continue to divert BMO's collateral-lease payments.  BMO contends that the Boushey Declaration is relevant to BMO's motion to appoint a receiver and, in particular, to the assertion that there is imminent risk of dissipation of McMartin Jr.'s assets.   BMO also asks the Court to take judicial notice of the existence of the Order on Motion for Contempt, entered on April 17, 2017, by the Grand Forks County District Court for the Northeast Central Judicial District, the court presiding over McMartin Jr.'s state court divorce proceeding.  (Doc.

7

No. 50-3 ("Contempt Order").) BMO asserts that taking judicial notice is appropriate under the Eighth Circuit's decision in *McIvor v. Credit Control Service, Inc.*, 773 F.3d 909, 914 (8th Cir 2014) (explaining that judicial notice of another court's opinion takes notice of the existence of the opinion, not the facts summarized therein).[3]

Randall Boushey is the president of A&L Potato Company. (Boushey Decl. ¶ 2.) A&L Potato Company entered into an equipment lease with McMartin Jr. (*Id*. ¶¶ 2-4, Ex. 1.) In his declaration, Boushey states that under the lease, A&L Potato Company made rent payments to McMartin Jr. in 2016 and 2017. (*Id*. ¶ 5.) In addition, Boushey states that after McM, Inc. filed for bankruptcy on February 10, 2017, McMartin Jr. has been demanding payments under the lease. (*Id*. ¶ 6.) Boushey attaches an e-mail that included a letter from McMartin Jr.'s attorney in which the attorney explains to McMartin Jr. that lease payments are not "tied up in the McM bankruptcy." (*Id*. ¶ 7, Ex. 2.) BMO contends that this evidences McMartin Jr.'s attempt to divert BMO's collateral (the lease payments from A&L Potato).

McMartin Jr. opposes the motion as it pertains to the Boushey Declaration on three primary grounds. First, McMartin Jr. asserts that BMO fails to provide a procedural basis under which to supplement the record at this stage of the proceeding. Second, McMartin Jr. asserts that the Boushey Declaration is unauthenticated, not based on Boushey's personal knowledge, and constitutes inadmissible hearsay. Third, McMartin Jr. maintains that the information contained in the Boushey Declaration is irrelevant as to

---

[3] BMO points out that it seeks no relief against McM, Inc., as it is a debtor in bankruptcy.

the issue of an existing danger of dissipation of McMartin Jr.'s assts. As to the issue of judicial notice of the Contempt Order, McMartin Jr. argues that judicial notice may be taken only as to the existence of the Contempt Order, but not the facts summarized within. *See McIvor*, 773 F.3d at 914.

First, the Court discerns nothing procedurally improper about seeking to supplement the record while a motion is pending. Second, the Court determines that the Boushey Declaration, and in particular the attached Exhibit 2 (a letter to McMartin Jr. from counsel concerning the A&L Potato lease), is admissible. The declaration demonstrates that McMartin Jr. e-mailed the attorney letter to Boushey. In addition, BMO contends that the letter is not offered for the truth of the matters therein, but instead to show that McMartin Jr. sent the letter as part of his request that lease payments be made to him after McM, Inc. filed for bankruptcy. Third, the Court finds that the Boushey Declaration is relevant, as it demonstrates that McMartin Jr. has received proceeds of BMO's collateral from Boushey. Thus, the Court will allow BMO to supplement the record with the declaration. As to the Contempt Order, the Court will take judicial notice of the aspects that are not subject to reasonable dispute, including the title of the Contempt Order and the fact that the court entered the Contempt Order against McMartin Jr. based on its conclusion that McMartin Jr. made intentional, willful financial decisions to benefit himself with his assets instead of meeting his obligations to his ex-wife. (Doc. No. 50-3 ¶ 41.)

Based on the above, the Court grants BMO's motion to supplement the record and takes judicial notice as explained above.

### III. Motion for Appointment of Receiver

BMO also moves for appointment of a receiver over the assets of McMartin Jr. BMO argues that a receiver is warranted. Specifically, BMO asserts that: it has a valid breach of contract claim against McMartin Jr. for breach of the Guaranty that is likely to be decided in BMO's favor; Defendants, and in particular McMartin Jr., have engaged in fraudulent conduct designed to induce BMO into making loans to McM, Inc.; imminent danger exists that BMO's collateral will be concealed, lost or diminished in value; BMO's legal remedies are inadequate; and the balance of harm weighs in BMO's favor. BMO asserts that in light of McMartin Jr.'s fraudulent behavior, combined with the fact that BMO simply has no idea how McMartin Jr.'s collateral is being used or may have been diverted, the appointment of a receiver is necessary.

McMartin Jr. opposes the motion. McMartin Jr. contends that the case is in its early stages, no discovery has been conducted, and even a possibility of success is not a critical factor in deciding whether to appoint a receiver. In addition, McMartin Jr. asserts that BMO, at least in its opening papers, only alleges fraudulent conduct in relation to the underlying claims related to the extension of credit and loans by BMO, not fraudulent conduct with respect to personal property in which McMartin Jr. granted BMO a security interest (or collateral). McMartin Jr. also asserts that BMO fails to present any evidence suggesting that McMartin Jr. has concealed collateral with the purpose of defrauding BMO or that any collateral is in imminent danger of dissipation. Finally, McMartin Jr. argues that other adequate and less drastic remedies are available and appointing a receiver will do more harm than good.

The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. *See* Fed. R. Civ. P. 66; *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); *American Express Travel Related Servs. Co., Inc. v. Forest Lake Ford, Inc.*, Civ. No. 08-138, 2008 WL 227800, at *2 (D. Minn. Jan. 24, 2008). A receiver is an extraordinary equitable remedy that is only justified in extreme situations. *See Aviation Supply Corp.*, 999 F.2d at 316. The appointment of a receiver lies within the discretion of the court. *Id.* at 317. Although there is no precise formula for determining when a receiver may be appointed, courts typically look at six factors: (1) a valid claim by the party seeking the appointment; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic equitable remedy; and (6) likelihood that appointing the receiver will do more good than harm. *See id.* at 316-17.

In this case, BMO alleges that via the Guaranty, McMartin Jr. promised to repay the indebtedness of McM, Inc. and that McMartin Jr. now owes BMO more than $43 million. In addition, BMO points out that McMartin Jr. previously granted to BMO security interests in all of his personal property assets, and that BMO only seeks a receiver over assets in which it already has valid security interests. Finally, McMartin Jr. argues that fraud by McMartin Jr., by definition, presents the danger of loss.

Having carefully considered BMO's Complaint, BMO's receivership motion and all supporting papers, including the Declaration of Lauren K. Mueller, and

McMartin Jr.'s opposing papers, the Court grants the receivership motion. The Court will issue a separate order appointing a receiver.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. No. [19]) is **DENIED**.

2. BMO's Motion for Appointment of Receiver Over the Assets of McMartin Jr. (Doc. No. [24]) is **GRANTED**. A separate Order appointing a receiver will be issued.

3. BMO's Motion for Leave to Supplement the Record and Requesting that the Court take Judicial Notice (Doc. No. [50]) is **GRANTED**.

Dated: August 8, 2017                     s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge