UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BMO Harris Bank, N.A., | Civil No. 17-335 (DWF/KMM) |
| Plaintiff, | |
| v. | **ORDER APPOINTING RECEIVER OVER THE ASSETS OF DEFENDANT MCMARTIN JR.** |
| McM, Inc. and Ronald G. McMartin, Jr., | |
| Defendants. | |

Plaintiff BMO Harris Bank N.A. (the "Bank"), has filed a Motion to Appoint Receiver over the Assets of Defendant McMartin Jr. ("Defendant McMartin") and for related expedited relief (the "McMartin Jr. Receiver Motion"). Having reviewed Plaintiff's Complaint (Doc. No. 1); the McMartin Jr. Receiver Motion and accompanying Memorandum of Law, the Declaration of Laureen K. Mueller (Doc. Nos. 24-26) and the Affidavit of Phillip L. Kunkel (Doc. No. 12) filed in support thereof; and having considered the record of this proceeding and the arguments of the parties.

**IT IS HEREBY ORDERED** that[1]:

1. The McMartin Jr. Receiver Motion (Doc. No. [24]) is **GRANTED**.

2. Phillip Kunkel is appointed as the receiver ("Receiver") over the assets of Defendant McMartin Jr. in which McMartin Jr. granted to the Bank valid liens and security interests pursuant to that certain Security Agreement dated as of July 31, 2012, and

---

[1] All capitalized terms which are not otherwise defined in this Order shall have the meanings given them in the Complaint or in the Memorandum of Law in Support of the McMartin Jr. Receiver Motion.

Addendum dated as of April 30, 2014, executed by Defendant McMartin Jr. in favor of the Bank (the "McMartin Jr. Security Agreement"). "Receivership Property" as used herein shall mean all personal property of Defendant McMartin Jr., wherever located, including, but not limited to all Goods, Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Letter of Credit Rights and General Intangibles, all as defined in Minnesota Uniform Commercial Code, Minn. Stat. § 336.9-101, *et seq.,* or in the McMartin Jr. Security Agreement, and those additional assets described in Exhibit A to the McMartin Jr. Security Agreement.

3. Defendant McMartin Jr. and his current or former agents, representatives and/or any entities in which Defendant McMartin Jr. holds an interest (excepting McM, Inc. which is a debtor in Case No. 17-B-30061, United States Bankruptcy Court for the District of North Dakota, and the chapter 7 trustee thereof) – and all employees, agents, officers, directors, members, partners, and/or representatives thereof – are directed to cooperate with the Receiver in the Receiver's performance of his duties and responsibilities by making themselves reasonably available to assist the Receiver as requested. In addition, they shall make immediately available for turnover to the Receiver, if requested, all of their records concerning Defendant McMartin Jr. and the Receivership Property so that the Receiver may adequately account for any funds collected or owing through the date the Receiver is appointed.

4. Immediately upon entry of this Order, the Receiver has the sole authority to take possession of the Receivership Property. Defendant McMartin Jr., and his current or former agents, representatives and/or any entities in which Defendant McMartin Jr. holds

an interest (excepting McM, Inc. which is a debtor in Case No. 17-B-30061, United States Bankruptcy Court for the District of North Dakota, and the chapter 7 trustee thereof) – and all employees, agents, officers, directors, members, partners, and/or representatives thereof – shall fully cooperate with the Receiver and shall take all necessary steps to comply with this Order and other orders of the Court, and with all applicable law and/or rules, and are enjoined from interfering with, secreting, removing, damaging or disabling the use, management, possession and control of the Receivership Property.

5. Upon the request of the Receiver, the United States Marshal Service or any state, county, or local policing authority, as the case may be, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take and secure possession, custody and control of, or identify the location of, any assets, records or other materials that are Receivership Property under this Order.

6. Defendant McMartin Jr. and any third-parties receiving notice of this Order shall surrender to the Receiver all Receivership Property, including any money held in accounts maintained by Defendant McMartin Jr. at any financial institution.

7. All banks, commodity firms, brokerage firms, financial institutions, and other persons or entities, which have possession, custody or control of any Receivership Property in the name of Defendant McMartin Jr., that receive actual notice of this Order by personal service, electronic mail or otherwise shall not:

   (a) Liquidate, transfer, sell, convey or otherwise transfer any Receivership Property in the name of Defendant McMartin Jr. except upon instructions from the Receiver;

(b) Exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any Receivership Property to the Receiver's control without the permission of this Court;

Further, all such institutions shall:

(c) Within five (5) business days of receipt of notice, serve on the Receiver a certified statement setting forth, with respect to each such Receivership Property, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

(d) Cooperate expeditiously in providing information and transferring Receivership Property to the Receiver or at the direction of the Receiver.

## AUTHORITY OF RECEIVER

8. Immediately upon entry of this Order, and continuing until expiration or termination of the receivership, the Receiver is authorized to take any actions that the Receiver, in his discretion, deems reasonable and appropriate to take possession of, to exercise full control over, to prevent waste of, and to preserve, manage, maintain, secure, and safeguard the Receivership Property. Without limiting the generality of the foregoing, the Receiver may, in his discretion:

(a) Take all action determined by the Receiver to be necessary or appropriate to take possession, safeguard, and preserve all tangible and intangible assets comprising the Receivership Property;

(b) Allow the Plaintiff and its counsel access to the Receivership Property at reasonable times to inspect the Receivership Property and all books and records related thereto;

(c) Collect any or other obligations owed to Defendant McMartin Jr.;

(d) Investigate and thereafter assert any rights, claims, causes of action, or defenses that comprise Receivership Property;

(e) Make payment from funds received by or on behalf of the Receiver of all of the following (collectively the "Operating Expenses"): (i) all premiums of hazard, liability and other insurance policies upon the Receivership Property for the term of the receivership, and (ii) any other expenses determined necessary by the Receiver;

(f) Have general power and authority to sue for and collect debts, demands, and receivables comprising Receivership Property and to compromise and settle such as are of doubtful value, including but not limited to processing, submitting and collecting on insurance claims, including crop insurance claims;

(g) Have access to and control of any deposit accounts, commodity accounts, brokerage accounts or similar accounts comprising Receivership Property which are maintained by Defendant McMartin Jr. at any financial or other institution, and this Order shall constitute direction to any such institution(s) to grant the Receiver full and complete access to all accounts;

(h) Have authority to open and close bank, commodity, brokerage or other accounts or other depository accounts in the name of the Receiver;

(i) Receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in Defendant McMartin Jr.'s name;

(j) Have authority to abandon or dispose of any Receivership Property or records that are not necessary for the administration of the Receiver's duties or are burdensome to the receivership;

(k) Have the power to direct Defendant McMartin, Jr. to sell Receivership Property upon approval of the Court; and

(l) Have authority to employ and pay such competent professionals to represent or assist the Receiver in carrying out the Receiver's duties, including, attorneys, accountants, appraisers, auctioneers, brokers, consultants, licensed salespersons, property managers, attorneys, investment bankers, and accountants and other professionals that do not hold or represent an interest adverse to the receivership. Any professional to be retained shall provide the Receiver with a disclosure of any potential conflicts of interest, and the professional or the Receiver shall file with the Court a notice of the retention and of the proposed compensation. Any party in interest may bring a motion for disapproval of any retention within 21 days after the filing of the notice of retention. The Receiver and any

professional retained by the Receiver shall be paid by the Receiver from the Receivership Property in the same manner as other expenses of administration and without separate orders, but subject to the procedures, safeguards, and reporting that the Court may order.

9. The Receiver shall give notice of the receivership to all creditors and other parties in interest actually known to the Receiver by mail or other means of transmission within 21 days after the time of the Receiver's appointment. The notice of the receivership shall include the time of appointment and the names and addresses of the Receiver, and the Receiver's attorney, if any.

10. Defendant McMartin Jr. shall fully cooperate with Receiver by adding Receiver as an additional insured and as loss payee on all insurance relating to the Receivership Property, including, but not limited to, fire, extended coverage, vehicle coverage, property damage, liability, fidelity, errors and omissions and worker's compensation and modifying the policies as deemed appropriate by Receiver. Defendant McMartin Jr. and his representatives and/or agents are prohibited from cancelling, modifying, reducing, or otherwise changing any and all insurance coverage in existence with respect to the Receivership Property.

11. The Receiver may pay all expenses and accounts payable with regard to the Receivership Property which are incurred in the normal and ordinary course of business of the Receivership Property and which are incurred by the Receiver on or after the Receiver taking possession of the Property. The Receiver, in his sole discretion, is not obligated to pay expenses, accounts payable and other obligations incurred prior to the Receiver taking possession of the Receivership Property except to the extent that Receiver determines the

payment of such preexisting expenses, accounts payable or other obligations is necessary and desirable.

12. The Receiver is authorized to do any acts which the Receiver deems appropriate or desirable to protect the Receivership Property and to use such measures, legal or equitable, as the Receiver deems appropriate or desirable to preserve, protect or manage the Receivership Property.

13. Subject to a determination by the Court that the Plaintiff has perfected security interests in and liens upon the Receivership Property and that the Receivership Property should be sold in whole or partial satisfaction of the obligations secured by such security interests and liens, the Receiver is authorized and directed to sell the Receivership Property on behalf of and in the name of Defendant McMartin Jr., outside of the ordinary course of business, subject to the following conditions:

    (a) The sale shall be to a bona fide third-party purchaser for the best price reasonably obtainable by the Receiver;

    (b) No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest;

    (c) The other terms and conditions of sales shall be deemed as appropriate in the reasonable business judgment of the Receiver;

    (d) Any liens, claims or encumbrances in the Property sold by the Receiver (if any) shall be preserved and retained in the proceeds of sale; and

    (e) All contracts for sale, other than for farm products, shall be subject to approval by the Court.

14. The Receiver shall have the following authority with respect to any sale of the Receivership Property:

    (a) In a manner consistent with paragraph 8(l) hereof, to retain the services of an investment banker or other financial advisor or real estate or other broker, or any other professional, to assist in obtaining offers for the sale and purchase of the Receivership Property; and

    (b) To do and perform each and every act desirable, proper or necessary with respect to any sale of the Receivership Property including, without limitation, the authority to execute and deliver bills of sale and all other documents necessary or desirable to transfer clear title to the Receivership Property on behalf of and in the name of Defendant McMartin Jr.

15. No sale of Receivership Property shall be final unless confirmed by the Court, and all bona fide purchasers for value, their successors and assigns may rely upon any such order of confirmation.

16. Upon closing a sale which has been approved by the Court, the Receiver shall retain the proceeds of such sale to be held in a segregated, interest-bearing account maintained by the Receiver subject to Court order directing the distribution of such funds.

17. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Property. All government offices which maintain public files of security interests in personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver. Any person who, or any entity that, receives a copy of this Order by hand delivery, mail, e-mail,

facsimile, or through any other means, shall have notice of this Order and be bound by its terms.

## STAY OF LITIGATION

18. As set forth in detail below, the following proceedings, excluding the instant proceeding and the McM Bankruptcy Case, are stayed until further Order of this Court:

> All civil legal proceedings of any nature relating in any way to the Receivership Property, wherever located, including, but not limited to, arbitration proceedings, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; and (b) any Receivership Property, wherever located (such proceedings are hereinafter referred to as "Ancillary Proceedings").

19. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

20. The Receiver or any other party in interest may bring a motion in this Court to lift the stay of any particular Ancillary Proceeding at any time. The Receiver or any other party in interest shall give notice of the motion to lift the stay to all parties to this case and all parties to the Ancillary Proceeding. If no party objects to the Receiver's or any other party in interest's motion to lift the stay within fourteen days of the date on which the motion is filed, this Court will order that the stay of the Ancillary Proceeding be lifted. If a party objects to the Receiver's or any other party in interest's motion, this Court will hold a hearing on the motion as soon as practicable. The burden will be on the objecting party to show why the Ancillary Proceeding should not go forward.

## THE RECEIVER'S COMPENSATION, PROTECTIVE ADVANCES REPORTING, ACCOUNTING AND BOND

21. Within 45 days of his appointment, the Receiver shall file with the Court the following, to the best of his knowledge:

    (a) a schedule of all Receivership Property and exempt property of McMartin Jr., describing, as of the time of appointment: (i) the location of the property; (ii) a description of all liens to which the Receivership Property is subject; and (iii) an estimated value of the Receivership Property; and

    (b) a schedule of all creditors and taxing authorities and regulatory authorities which relate to the Receivership Property, their mailing addresses, the amount and nature of their claims, whether the claims are secured by liens of any kind on the Receivership Property, and whether the claims are disputed.

The Court may order other inventories and appraisals if appropriate to the receivership.

22. The Receiver shall file with the Court financial reports (including an income and expense statement, and a statement of receipts and disbursements) not later than the 30th day of each month, for the previous month, and shall serve a copy upon counsel for the parties. The first such report shall be filed with the Court by September 30, 2017.

23. The Receiver shall post $100,000 in cash, bond, or letter of credit. The costs of such bond or other coverage shall be paid in the manner specified in the Order for the payment of other costs of the Receiver.

24. Upon his appointment, the Receiver shall prepare and deliver to Plaintiff his first budget, which shall include the Receiver's anticipated fees and expenses for a period of two weeks beginning with the date of his appointment. As soon as practicable, this initial budget shall be expanded to include the necessary operating expenses of the

Receivership Property. The expanded budget shall include a forecast of both income and expenses of the Receivership, and shall identify the funding needed from Plaintiff, if any, of the Receivership estate. After the expanded budget is presented, the Receiver shall, every two weeks following the delivery of the expanded budget, prepare and deliver to the Plaintiff a thirteen-week rolling budget (the "Budget").

25. It is understood and expected that the Receivership will rely upon the Plaintiff to fund all necessary Receivership expenses (referred to collectively as "Receivership Expenses") to the extent the proceeds immediately available from the Receivership Property are insufficient to fund the same. The Budget shall be delivered to the Plaintiff by the Friday of each succeeding budget period at 4:00 p.m. CDT, together with a funding request asking that Plaintiff agree to fund the Receivership per the terms of the Budget for the next two weeks. By Tuesday at 4:00 p.m. CDT following delivery of the Budget and funding request (or as soon thereafter as is practicable), Plaintiff shall notify the Receiver of its decision to not fund the Budget or any portion thereof. If Plaintiff elects to fund in accordance with the Budget, it shall deposit into the Receiver's operating account an advance (each a "Protective Advance") no later than 4:00 p.m. CDT on Wednesday of that same week (or as soon thereafter as is practicable) in an amount equal to the funding need identified in the Budget for the following two weeks. The Receiver and the Bank are authorized to modify the Budget, by agreement, without Court approval. Each Protective Advance, all funds advanced by Plaintiff pursuant to the initial budget or the expanded budget, and all other amounts that may be advanced by Plaintiff to the Receivership, whether to fund Receivership Expenses or otherwise, are collectively referred to in this

Order as the "Protective Advances." Each Protective Advance shall bear interest from the date such Protective Advance is made at the rate of interest specified in the McMartin Jr. Guaranty. The obligation to repay the Protective Advances, together with interest accrued thereon, to Plaintiff shall be deemed to be part of the amount guaranteed by McMartin Jr. under the McMartin Jr. Guaranty, and shall be secured in the same priority and in the same collateral as the indebtedness evidenced by the McMartin Jr. Security Agreement.

26. Subject to the terms and conditions of this Order, including without limitation Paragraph 27, the Receiver is authorized to use the Protective Advances and Cash Collateral for the period from the date hereof through the date which is earlier to occur of (a) the Termination Date of the Receivership; (b) the discharge of the Receiver; or (c) dismissal of this case (the "Specified Period"). The authorization for the Receiver to use the Protective Advances pursuant to this Order shall terminate at the expiration of the Specified Period.

27. The Receiver shall be authorized to use the Protective Advances and Cash Collateral in accordance with the Budget and should not use in excess of the amount allocated to such budget line item in the Budget by more than (a) 15 % for the first two weeks after this Order is entered; and (b) 10% in the aggregate thereafter.

28. Except as set forth in this Order, Plaintiff shall have no obligation to make any Protective Advances to the Receiver. If Plaintiff elects not to fund the Receivership in accordance with the Budget, then:

> (a) The Receiver is authorized to allocate available proceeds to the cost of performing such duties as the Receiver, with the consent of Plaintiff, may reasonably determine, and to the extent other duties are not capable of

performance by reason of such lack of proceeds, the Receiver shall be relieved from performing the same;

(b) The Receiver may seek and shall be entitled to his immediate discharge and may take whatever action it deems necessary in his sole and absolute discretion to avoid incurring unfunded obligations to third parties; and

(c) To the extent there are insufficient proceeds from the Receivership Property to pay the Receivership Expenses prior to the Receiver's discharge under paragraph 38 of this Order, Plaintiff agrees to pay such Receivership Expenses through the date of discharge; and to the extent there are insufficient proceeds from the Receivership Property to pay the fees and expenses of the Receiver, Plaintiff agrees to pay the fees and expenses of the Receiver through the date of his discharge.

29. The Receiver is not obligated to advance his own funds to pay any Receivership Expenses. The Receiver shall not be entitled to borrow funds from a third party (other than trade credit incurred in the ordinary course of business) except pursuant to an order of the Court.

30. The Protective Advances may not be used to litigate, object to, consent or challenge in any manner or raise defenses to the debt owed to or collateral position of Plaintiff under the McMartin Jr. Guaranty and the McMartin Jr. Security Agreement, whether by challenging the validity, extent, amount, perfection, priority or enforceability of the indebtedness under the McMartin Jr. Guaranty or the validity, perfection or priority of any security interest or lien with respect thereto, whether granted pre-Receivership or post-Receivership, or any other rights or interests or replacement liens with respect thereto or any other rights or interests of Plaintiff, or by seeking to subordinate or re-characterize the obligations or to disallow or avoid any claim, security interest, lien, or replacement lien

13

or by asserting any claims or causes of action against Plaintiff, or any of their respective directors, managers, officers, agents, or employees.

31. If the Cash Collateral, or Protective Advances made by the Plaintiff, pursuant to this Order, are used by the Receiver and benefit another creditor of McM, Inc. besides the Plaintiff, the Receiver is authorized to recover from property securing the claim of such benefitted creditor, the reasonable, necessary costs and expenses of preserving, or disposing of, such property, to the extent of any benefit, and to use such proceeds to repay the Plaintiff its Cash Collateral or Protective Advances used to create such benefit.

32. To the extent that other professionals are retained by the Receiver, subject to application, review and approval of this Court, those professionals shall be entitled to reasonable compensation as set forth under any such application that may be submitted to the Court. The Receiver and any professional retained by the Receiver shall be paid by the Receiver from the Receivership Property in the same manner as other expenses of administration and without separate orders, but subject to the procedures, safeguards, and reporting that the Court may order.

33. Within thirty days after the end of each month, the Receiver shall apply to the Court for compensation and expense reimbursement from the Receivership Property (the "Monthly Fee Applications"). At least fourteen days prior to filing each Monthly Fee Application with the Court, the Receiver will serve upon counsel for Plaintiff and Defendant McMartin Jr. a complete copy of the proposed Monthly Fee Application, together with all exhibits and relevant billing information.

34.     Unless a party files a written motion objecting to the payment of the fees and expenses set forth in a Monthly Fee Application, within fourteen days of the date the Monthly Fee Application is filed, the Receiver shall be entitled to pay the applicant which filed Monthly Fee Application the fees and expenses requested.  If a party objects to a Monthly Fee Application, this Court shall schedule a hearing on the objection as soon as practicable.

35.     Unless otherwise provided by this Order, the Receiver shall furnish the reports and any notice required by this Order to parties who have appeared in the captioned matter.

36.     The Receiver shall furnish to the parties' counsel any additional information regarding the Receivership Property as may reasonably be requested by Plaintiff, Defendant McMartin Jr., or other parties to this action, but Receiver is authorized to request instructions from this Court should any party request information or documents which would be a breach of confidentiality, unduly burdensome or expensive to produce, or which Receiver believes have been requested to annoy or harass or for another improper purpose.

37.     The Receiver is authorized, if necessary or appropriate, to request instructions from the Court on an expedited basis, regarding any matters which are not anticipated by the broad authority provided the Receiver.  The Receiver shall make any requests for instructions in writing and shall serve the request and notice therefore on the parties or counsel for all parties to this action.

## TERM AND FINAL ACCOUNTING

38. This receivership shall continue until further order of this Court, unless, however, the Receiver resigns after giving 30 days advance written notice to this Court and to Plaintiff through Plaintiff's counsel. Upon giving such notice and submitting to this Court a final accounting of the Receiver's duties hereunder, and Receiver's turning over of the Receivership Property, funds held pursuant hereto and related records, the Receiver shall be released and discharged from further obligations hereunder and any bond the Receiver obtained, if still in place, may be cancelled.

39. The Receiver may be removed either (a) automatically 30 days after filing of a written demand for removal signed by Plaintiff's counsel and filed with the Court; or (b) in the Court's equitable discretion upon a motion for cause. If the Receiver is removed, a successor receiver may be appointed on an expedited basis by motion filed by Plaintiff requesting the appointment of a successor receiver. In any such case, the Receiver shall file a final accounting with the Court and shall not be discharged until the Court shall have approved such accounting.

40. Immediately upon termination of the receivership or resignation of the Receiver, the Receiver shall turn over to any successor receiver all of the Receivership Property and assets of the receivership estate and all other books and records relating to Defendant McMartin Jr., unless otherwise ordered by the Court.

## MISCELLANEOUS PROVISIONS

41. The Receiver shall be entitled to all defenses and immunities provided at common law for acts or omissions within the scope of the Receiver's appointment. No

person other than a successor receiver duly appointed by the Court shall have a right of action against the Receiver to recover Receivership Property or the value thereof. A party or party in interest may conduct discovery of the Receiver concerning any matter relating to the Receiver's administration of the Receivership Property after obtaining an order of the Court authorizing the discovery.

42. The Receiver and his employees, agents, and professionals shall have no personal liability, whether arising out of or related to events occurring prior to or after entry of this Order or otherwise, and they shall have no claim asserted against them relating to Receiver's duties under this Order, except for claims due to their gross negligence, willful misconduct, malicious acts and/or the material failure to comply with this Court's orders. The Receiver shall not be liable for any contract, lease, claim, obligation, liability, action, cost or expense of Defendant McMartin Jr. arising out of or related to events occurring prior to this Order.

43. The Receiver and his employees, agents, and professionals shall have no personal liability in connection with any environmental claims, liabilities, obligations, liens, or amounts owed to or by any of Defendant McMartin Jr.'s creditors because of his duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors whose claims are not against the Receivership Property. Such trade creditors' and general unsecured creditors' rights shall be solely determined in accordance with applicable law.

44. The authority granted to the Receiver by this Order is self-executing. The Receiver is authorized to act on behalf of Defendant McMartin Jr. in the Receiver's own

name and or in the name of Defendant McMartin Jr., as the Receiver deems appropriate, without further Order of this Court.

45. The Receiver is subject to the personal jurisdiction of this Court.

46. Defendant McMartin Jr. and his representative and agents are prohibited from removing any Receivership Property or diverting any income therefrom without the further order of this Court.

47. This Order may be amended for cause shown after a motion or hearing upon prior written notice to Plaintiff, Defendant McMartin Jr. and the Receiver. This Order also may be amended by order agreed to by the foregoing parties.

48. This Order shall be effective immediately upon its entry and for all purposes.

49. There being no just reason for delay, the Court finds this a final and appealable order.

50. For the avoidance of doubt, this Order (a) does not apply to any property or asset owned by McM, Inc. or which represents property of the estate in the bankruptcy case of McM, Inc. Case No. 17-B-30061, United States Bankruptcy Court for the District of North Dakota, and (b) is not binding in any way on the chapter 7 trustee in such bankruptcy case.

51. If the Receiver learns that McMartin Jr. is in possession of assets which are property of the estate in the McM Bankruptcy Case, the Receiver will promptly notify the chapter 7 trustee in the McM Bankruptcy Case.

Dated: August 8, 2017        s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge